IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TAMMY SUE KOONTZ,

     Plaintiff,

v.                                        Civil Action No. 3:18cv380

SUSAN JORDING, *et al.*,

     Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on two motions: Defendants Susan Jording, Brian Shaunfield, and the Home Depot, Inc.'s ("Home Depot," and, collectively with Jording and Shaunfield, "Defendants") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion to Dismiss"), (ECF No. 12); and Defendants' Motion to Strike Plaintiff's Second Reply in Opposition to Defendants' Motion to Dismiss (the "Motion to Strike"), (ECF No. 17). Plaintiff Tammy Sue Koontz ("Koontz") responded in opposition to the Motion to Dismiss, (ECF No. 14), and Defendants replied, (ECF No. 15). Koontz then filed a "Second Reply" to the Motion to Dismiss. (ECF No. 16). Koontz did not respond to the Motion to Strike, and the time to do so has expired.

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[1] For

---

[1] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Koontz is a Virginia resident. Jording is a North Carolina resident; Shaunfield is a North Carolina resident; and Home Depot is

the reasons that follow, the Court will deny in part and grant in part the Motion to Dismiss and grant the Motion to Strike.

## I. Procedural and Factual Background

### A. Procedural Background

On May 11, 2018, Koontz filed a complaint against Defendants in the Circuit Court for Mecklenburg County, Virginia. On June 4, 2018, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441.[2] On June 11, 2018, Defendants filed a Motion to Dismiss in this Court (the "June 11, 2018 Motion to Dismiss"). (ECF No. 2.) On June 25, 2018, Koontz moved to amend her complaint, (ECF No. 4), which the Court allowed on June 27, 2018. (ECF No. 6.) The Court then denied as moot the June 11, 2018 Motion to Dismiss. (June 27, 2018 Order, ECF No. 5.)

In her Amended Complaint, Koontz brings three counts against each Defendant: Count 1, common law defamation; Count 2, common law tortious interference with employment; and, Count 3, common law conspiracy to interfere with employment. On July 9, 2018, Defendants filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6),[3] asking the

---

incorporated in Delaware with its principal place of business in Georgia. The parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

[2] Section 1441(a) provides, in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Here, the Court exercises diversity jurisdiction, thereby allowing removal.

[3] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Court to dismiss all the counts in the Amended Complaint. Koontz filed a response in opposition to the Motion to Dismiss and Defendants filed a reply.

Without seeking leave of Court, Counsel for Koontz then filed a response to Defendants' reply.[4] (ECF No. 16.) On August 10, 2018, one day after Koontz filed her response to Defendants' reply, Defendants filed the Motion to Strike, which the Court will grant.[5] (ECF No. 17.)

### B. Factual Background[6]

Koontz, a former Home Depot employee, brings claims against two of her former Home Depot supervisors, Jording and Shaunfield, and Home Depot, on a theory of respondeat superior. The claims arise from interactions with Koontz's former supervisors which eventually led to her termination. Koontz alleges in the three-count Amended Complaint that Defendants defamed

---

[4] Local Rule for the United States District Court for the Eastern District of Virginia 7 states in relevant part that,

> [u]nless otherwise directed by the Court, the opposing party shall file a response brief and such supporting documents as are appropriate, within fourteen (14) calendar days after service and the moving party may file a reply brief within six (6) calendar days after the service of the opposing party's response brief. *No further briefs or written communications may be filed without first obtaining leave of Court.*

E.D. Va. Loc. Civ. R. 7(f)(1) (emphasis added). Koontz replied to the Motion to Dismiss but did not seek permission from the Court to file a second response brief.

[5] In so moving, Defendants properly invoked Local Rule 7 based on Koontz's failure to seek leave to file additional briefing. Koontz did not file any opposition to the Motion to Strike, nor did she separately suggest any rationale explaining the need for the second reply. Given the violation of the Local Rule and the absence of explanation therefor, the Court will grant the Motion to Strike. (ECF No. 17.)

[6] For the purpose of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Koontz. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

her, tortiously interfered with her employment, and conspired to interfere with her employment. Koontz contends that Jording and Shaunfield defamed Koontz by making, several times, the false statement that Koontz "was arrested for a felony." (Am. Compl. ¶ 18, ECF No. 5.) Koontz further asserts that Defendants conspired to, and did, tortiously interfere with her employment at Home Depot through the use of "improper means and methods, including defamation." (*Id.* ¶¶ 39, 45.) The Court summarizes Koontz's allegations below.

### 1.    Summer of 2017 Interactions Between Koontz and Jording

Home Depot employed Koontz for over ten years at its South Hill store. In the summer of 2017, Home Depot transferred Jording and Shaunfield to Home Depot, South Hill,[7] allegedly to control labor costs. Jording and Shaunfield purportedly sought to do so by firing "older seasoned employees," who earned more per hour and whose benefits cost more, and then "replac[ing] them with younger, less experienced and less expensive employees."[8] (*Id.* ¶ 4.)

Although Koontz does not specify the precise dates, Koontz alleges that she and Jording engaged in numerous verbal confrontations during the summer of 2017. The first episode occurred when Jording reprimanded Koontz in a "bizarre, Tourette's Syndrome like profanity laden [sic] dressing down" in front of employees Koontz supervised and vendors with whom Koontz "had worked with for years." (*Id.* ¶ 6.) The interaction, according to Koontz, violated Home Depot's policies. Koontz left the store after this incident.

---

[7] Shaunfield became the new store manager at Home Depot, South Hill. Koontz claims that Jording was "manager over [Koontz]." (Am. Compl. ¶ 2.)

[8] Koontz makes nearly all her allegations about Jording and Shaunfield's plan to lower costs "upon information and belief." (*See, e.g.*, Am. Compl. ¶ 4.) Because, even if true, Koontz fails to raise a claim, the Court views these allegations as true for purposes of the Motion to Dismiss.

When Koontz returned to work the next day, "she told the new store manager . . . Shaunfield what had happened, and apologized to . . . Jording for her behavior." (*Id.* ¶ 8.) Koontz alleges that Jording never apologized and "nothing was ever done about this, nor was it ever reported up the chain." (*Id.* ¶ 8.) Shaunfield's failure to report Jording's conduct amounts to a "violation of [Home Depot's] Standard Operating Procedure and violations of company policy." (*Id.* ¶ 8.) This violative conduct, according to Koontz, places Jording and Shaunfield outside the scope of their authority as employees of Home Depot.

Koontz next contends she "was written up for two occurrences simply because she misread the schedule and showed up" just before 10:30 a.m. when she was supposed to have arrived by 10:00 a.m. (*Id.* ¶ 10.) Koontz did not report to work on time "because she misread the schedule." (*Id.*) She "apologized to management and agreed as a compromise to stay an extra half hour at the end of her shift." (*Id.*) Koontz avers that Jording unfairly singled out Koontz for this violation because "[o]ther employees with much more egregious attendance violations were never written up." (*Id.*)

As with the earlier "dressing down," Koontz reported this unfair treatment to Shaunfield. (*Id.* ¶¶ 4, 6.) Koontz also conveyed her "concerns that . . . Jording was using an organized and deceitful plan to interfere with [Koontz's] relationship with Home Depot and terminate her." (*Id.*) Koontz later found out that "Shaunfield was in on the plan and [was] reporting [Koontz's] personal and private revelations, conversations and concerns back to . . . Jording . . . [in] violation of Home Depot policy." (*Id.*)

### 2. December Events Leading to Koontz's Lay Off From Home Depot

Although Koontz "walked the line and things quieted down for a month or two," on December 9, 2017, Koontz's daughter called her at work asking for help with a "domestic

incident." (*Id.* ¶ 12.) Assistant Store Manager Mike Lemmons[9] permitted Koontz to leave work to see her daughter. Koontz did not return to work that day, but when she realized that she could not return, "she called the store within an hour and spoke with . . . Jording . . . [who] told [Koontz that] 'she understood and it was OK.'" (*Id.* (quoting Jording).)

When Koontz returned to work the next day, Jording asked Koontz if she had been charged with a crime and asked her for the police paperwork.[10] Koontz replied that she may have been charged in the domestic incident. Koontz later learned that no one had been charged, and she "immediately reported this [information] to the Defendants." (*Id.* ¶ 13.) Defendants insisted that Koontz "produce the associated paperwork which did not exist."

According to Koontz, "Defendants hatched a plan to use this incident to accomplish their goal, which was to interfere with [Koontz's] relationship with Home Depot and terminate [Koontz's] long-standing employment." (*Id.* ¶ 14.) Jording contacted the corporate Home Depot Human Resources Department to inform them that Koontz had been arrested. The corporate Home Depot Human Resources Department "demanded the associated police paperwork." (*Id.*) Koontz "again told them that there was none, and no paperwork existed as she had not been charged with anything," (*Id.*), but did so to no avail:

> Defendants were made immediately aware that [Koontz] had not been charged by the police and had no reason to question the veracity and truth of her statements, yet . . . Jording and . . . Shaunfield apparently continued to intentionally mislead Home Depot's Human Resources Department about the facts, and demand paperwork that did not exist for charges that they knew did not exist.

---

[9] Koontz does not name Lemmons as a defendant.

[10] Koontz does not identify why Defendants believed she may have been charged with a crime. She claims that she believed "she might have been charged, as often in a domestic incident in this area, all are charged, and then they figure it out later." (Am. Compl. ¶ 13.)

(*Id.* ¶ 15.) Koontz avers that "[b]ecause of Defendants['] organized and concerted effort to mislead Home Depot, [Koontz] was laid off" on December 23, 2017, "without notice."[11] (*Id.* ¶ 16.)

Over the Christmas season, Defendants "maliciously and falsely [spoke] about" Koontz to her "colleagues, vendors, friends and customers" by saying that Home Depot terminated Koontz "because she was arrested for a felony crime." (*Id.* ¶ 17.) During this time, an unnamed fellow Home Depot employee overheard Jording state that "'[Koontz] was arrested for a felony' and that she 'was not compliant with the SOP' (Standard Operating Procedures) and 'when you don't comply with SOP and show us what we need to see then we need to terminate.'" (*Id.* ¶ 18 (quoting Jording).) The employee also stated that "it had 'spread like wildfire through the store that [Koontz] had been terminated for a felony arrest, and that the info came from management.'" (*Id.* ¶ 18 (quoting an unnamed Home Depot employee).)

Koontz further alleges that Defendants sent Koontz on a "wild goose chase" to get a copy of her criminal record despite Koontz having told them that no charges were outstanding. (*Id.* ¶ 20.) Defendants took no steps to obtain the records themselves. Although Koontz tried to obtain the police records Defendants requested, she was told "it would take two weeks to get the documents Defendants were requesting." (*Id.* ¶ 20.) As a result, Koontz "spent the holidays languishing at home and wondering about whether or not she still had the job she loyally performed for over ten years and the retirement, health care and benefits she had worked so hard for." (*Id.*)

---

[11] Koontz claims that Jording and Shaunfield's actions "shine[] a light on the fraud the Defendants were perpetrating against [Koontz] in order to tortiously interfere with her employer-employee relationship with Home Depot." (Am. Compl. ¶ 15.)

### 3. Koontz's Brief Return to Work and Termination of Employment Shortly Thereafter

On January 22, 2018, Koontz "was called to go back in to work, and . . . immediately did so." (*Id.* ¶ 21.) She "worked for six hours and forty-five minutes" before Defendants sent her home. (*Id.*) Defendants informed Koontz that "they needed and were now waiting on a criminal background check, even though they had six weeks to obtain one." (*Id.* ¶ 21.)

On January 26, 2018, Home Depot summoned Koontz back to work after her criminal background check came back "OK."[12] (*Id.* ¶ 22.) Soon after Home Depot allowed Koontz to return, Jording reprimanded Koontz in front of all department heads over "misplaced John Deere Tractor keys," using the same type of profane language that Jording had voiced in the summer of 2017. (*Id.* ¶ 22.) This admonishment took place in front of all the department heads. (*Id.*) Following this confrontation, Koontz "was written up by the Defendants . . . she was told she was being written up for 'lack of integrity.'" (*Id.* ¶ 22.)

Sometime later, Koontz served as a spotter for Paul Furr,[13] a fellow Home Depot employee, who was operating a forklift. While Koontz served as a spotter for Furr, he damaged a printer by backing the forklift into it. Furr told Koontz that he would report the accident, but, unbeknownst to Koontz, he never did. When Jording later asked if anyone knew anything about the damaged printer, Koontz explained what had happened. Koontz states that "[w]hen [she] told the truth . . . Jording pulled her forklift license," but did not ever reprimand or speak to Furr. (*Id.* ¶ 23.)

---

[12] Counsel for Koontz adds that it was on January 26, 2018, that Koontz first contacted him regarding this "vindictive, retaliatory, slanderous, tortious and egregious actions of the Defendants." (Am. Compl. ¶ 22.) Of course, the Court disregards any commentary from counsel as to the nature of the claims here.

[13] Koontz does not name Furr as a defendant.

On February 12, 2018, Jording and Shaunfield "with reported looks of glee," fired Koontz. (*Id.*) Koontz avers that the damaged printer incident "was just used as a convenient ruse to terminate [Koontz], accomplishing their goal of causing the termination of [Koontz] by the intentional use of slander, fraud and deceit." (*Id.*)

According to Koontz, Defendants' actions caused her to lose "not only her job, but her house, her automobile, her savings, her life insurance and the reasonable expectancy of a retirement plan, profit sharing and the other benefits that flow from her being a longstanding and loyal employee of the Home Depot Corporation." (*Id.* ¶ 24.) Koontz asserts that Defendants "used improper means and methods, including defamation, the misuse of confidential information, and the violation of legal, company and professional standards, to interfere with [her] Home Depot Employment and related legitimate economic expectancies." (*Id.* ¶ 45.) Jording and Shaunfield's attempt to "[c]lean [h]ouse" by "pick[ing]" at employees until they could "get rid of" them clearly violated Home Depot's corporate policies. (*Id.* ¶¶ 9, 24.)

## II. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs.*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to

begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

### III. Analysis: Defamation

The Motion to Dismiss first challenges Count 1, Koontz's defamation claim against each Defendant.[14] As to Jording, Koontz identifies only one statement which Jording published, albeit

---

[14] The Amended Complaint entitles Count 1 only as common law claim of defamation against each Defendant. "All defamation is either defamation *per se* or *per quod*." *Sepmoree v. Bio-Med. Applications of Va., Inc.*, No. 2:14cv141, 2014 WL 4444435, at *3 (E.D. Va. Sept. 8, 2014) (citing *Jarrett v. Goldman*, 67 Va. Cir. 361, 2005 WL 1323115, at *5 (Va. Cir. Ct. May 31, 2005)). "The difference between the two concerns the [damages] . . . element of a defamation claim: if it falls within the four categories of defamation *per se* it is actionable

repeatedly, about Koontz's separation from Home Depot: that she was separated from Home Depot due to an arrest for a felony. Defendants argue that Jording's statement occurred in a privileged context and that the intra-corporate *privilege* bars Koontz's defamation claim. Because Defendants' argument regarding the intra-corporate privilege fails, the defamation claim against Jording and Home Depot survives this Rule 12(b)(6) challenge.[15]

Defendants further assert that Koontz does not identify any specific information about what Shaunfield said or published regarding Koontz's separation from the company. But at this early stage Koontz also pleads sufficient facts to allege defamation against Shaunfield because she states that Shaunfield "communicate[d] that [Koontz] had been 'arrested for a felony' and

---

without any damages; whereas if it is defamation *per quod* the statements are defamatory by implication and cause the injured party special damages." *Id.* (footnote omitted) (citing *Jarrett*, 2005 WL 1323115, at *5–6); *see also Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 853 (Va. 1985), *overruled on other grounds Cashion v. Smith*, 749 S.E.2d 526 (Va. 2013) ("A plaintiff who proves the publication of words actionable *per se* is simply relieved of the necessity of proving the quantum of damages for injury to reputation, humiliation, and embarrassment.").
    Koontz plausibly alleges that she suffered damages arising out of her defamation claim because she avers that as a result of Defendants' actions she "lost not only her job, but her house, her automobile, her savings, her life insurance and the reasonable expectancy of a retirement plan, profit sharing and the other benefits." (Am. Compl. ¶ 24.) For this reason, the Court finds no reason to distinguish between these two forms of defamation in this case. Because she plausibly alleges facts to support a defamation *per se* claim and plausibly alleges damages, the Court allows Count 1 to proceed at this early stage.

[15] The defamation claim against Home Depot survives under the doctrine of respondeat superior. "In Virginia, 'an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed.'" *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018) (quoting *Plummer v. Ctr. Psychiatrists, Ltd.*, 476 S.E.2d 172, 174 (Va. 1996)). Here, Koontz alleges that Jording acted both within and outside the scope of her employment. Reading all reasonable factual inferences in favor of Koontz, the Court must presume that Jording acted *within* the scope of her employment when she made the alleged defamatory statement. Because the Court concludes that the defamation claim against Jording and Shaunfield may proceed, at this procedural posture, the Court will allow the defamation claim against Home Depot to proceed as well.

that charges were pending to her colleagues, vendors, friends and customers all the while knowing that these statements were false, defamatory, slanderous and insulting to [Koontz]." (Am. Compl. ¶ 19.)

Because Koontz plausibly alleges a claim of defamation when Jording and Shaunfield told others she had incurred a felony arrest, her claim against them can proceed. Her claim against Home Depot, which she bases on a theory of respondeat superior, may proceed as well. The defamation claim survives the Motion to Dismiss as to all Defendants.

## A.     Standard for Pleading Defamation under Virginia Law

In Virginia,[16] a plaintiff claiming defamation must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "To prevail on a claim for defamation, a party must prove by a preponderance of the evidence that the allegedly defamatory statements are both false and defamatory, so 'harm[ing] the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].'" *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC*, No. 3:12cv131, 2012 WL 1898616, at *3 (E.D.

---

[16] A court exercising diversity jurisdiction applies the substantive law of the forum state and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938).

In Virginia court, a plaintiff must plead the words spoken by the defendant *in haec verba*. *Fed. Land Bank of Balt. v. Birchfield*, 3 S.E.2d 405, 411 (1939) ("Good pleading requires that the exact words spoken or written must be set out in the declaration *in heac verba*. Indeed, the pleading must go further, that is, it must purport to give the exact words.") But this case has properly been removed to federal court, meaning that federal pleading standards apply.

Under federal standards, a plaintiff may, but need not state the exact words spoken by the defendant to maintain a cause of action for defamation. *See Doe v. Roe*, 295 F. Supp. 3d 664, 678 (E.D. Va. 2018) (finding that "Virginia pleading standards are not controlling [in a case filed in the Eastern District of Virginia], rather it is Rule 8 [of the Federal Rules of Civil Procedure], that governs the outcome of [a] motion to dismiss.") Rule 8(a) requires that a plaintiff set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Va. May 23, 2012) (first alteration in original) (quoting *Chapin v. Knight–Ridder, Inc.*, 993 F.2d

1087, 1092 (4th Cir. 1993)). "If the statements at issue are either not defamatory, objectively

true, or protected expressions of opinion," no actionable defamation exists. *Id.* at *3 (citing *Am.*

*Commc'ns Network v. Williams*, 568 S.E.2d 683, 686 (Va. 2002)).

> A statement constitutes defamation *per se* if it:
>
> (1) imputes the commission of a criminal offense involving moral turpitude for
> which a party may be convicted; (2) imputes that the person is infected with a
> contagious disease which would exclude the party from society; (3) imputes an
> unfitness to perform the duties of a job or a lack of integrity in the performance of
> the duties; or (4) prejudices the party in her profession or trade.

*Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 n.2 (Va. 1998) (citing *Fleming*, 275 S.E.2d at

635).[17] "[T]o be defamatory, a statement must be more than unpleasant or offensive . . ."

*Hockycko v. Entrodyne Corp.*, No. 6:05cv25, 2005 WL 3132320, at *6 (W.D. Va. Nov. 22,

2005). "Defamatory words 'make the plaintiff appear odious, infamous, or ridiculous.'" *Cutaia*,

2012 WL 525471 at *3 (quoting *Chapin*, 993 F.2d at 1092).

The requisite intent a plaintiff must prove in a defamation action depends upon the

plaintiff's status as a public or private figure and the damages sought. *Suarez*, 2010 WL

5101185, at *2. Under Virginia law, a private individual like Koontz must make a showing that

the Defendants "published the statement knowing that it was 'false, or believing it to be true,

lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on

---

[17] To be actionable in the profession or trade context, "a statement must be 'necessarily hurtful in its effect upon plaintiff's business and must affect him [or her] in his [or her] particular trade or occupation,' and there must be 'a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff.'" *Marroquin v. Exxon Mobil Corp.*, No. 08-391, 2009 WL 1529455, at *9 (E.D. Va. May 27, 2009) (quoting *Fleming*, 275 S.E.2d at 636).

which the publication was based.'" *Sepmoree*, 2014 WL 4444435, at *7 (quoting *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985)).

**B. Because Koontz Plausibly Pleads All Elements of a Defamation Claim Against Shaunfield and Jording, Count 1 May Continue Against All Defendants At This Early Stage**

Under the deferential reading this Court must give Koontz's Amended Complaint, Koontz pleads facts sufficient to state a claim of *per se* defamation[18] against both Jording and Shaunfield, and, therefore, also against Home Depot, who may be held liable for the tortious actions of its employees.

Because saying someone has been arrested for a felony, read favorably toward Koontz, could fall under three of four legal provisions defining defamation *per se*,[19] Koontz successfully alleges that Jording and Shaunfield made a defamatory statement. *Yeagle*, 497 S.E.2d at 138 n.2 (citing *Fleming*, 275 S.E.2d at 635). Koontz also contends that the police did not arrest her as a result of the domestic incident, meeting the requirement that the statement be untrue. *Jordan*,

---

[18] As noted above, defamatory words can constitute defamation *per se* if they "imput[e] an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties" or "prejudices the party in [his or] her profession or trade." *Yeagle*, 497 S.E.2d at 138 n.2 (citing *Fleming*, 275 S.E.2d at 635). To constitute defamation *per se* in the employment context, there must be "'a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Marroquin*, 2009 WL 1529455 at *9 (quoting *Fleming*, 275 S.E.2d at 636).

[19] Koontz pleads plausible facts that allow the Court to draw the reasonable inference that Jording and Shaunfield's statement that Koontz was "arrested for a felony," (Am. Compl. ¶ 18), "imputes an unfitness to perform the duties of [Koontz's] job" because it implies that Koontz engaged in a serious criminal act, which is the second and third way to establish defamation *per se*. *Yeagle*, 497 S.E.2d at 138 n.2. The statement also could be read to fall under the fourth definition of defamation *per se* because a felony arrest could prejudice Koontz in her profession by harming her reputation in the workplace. Koontz alleges facts sufficient to allow the Court to draw the reasonable inference that the required adequate nexus exists between the "content" of the statement and the "skills or character" necessary to do the job because Jording and Shaunfield's statement arose in the context of discussing the termination of Koontz's employment. *See Marroquin*, 2009 WL 1529455 at *9 (quoting *Fleming*, 275 S.E.2d at 636).

612 S.E.2d at 206. This satisfies prong two of asserting a defamation claim: assuring that an actionable statement stands before the Court. *Id.*

To succeed in demonstrating a claim of defamation, Koontz must plead sufficient facts to show that Jording and Shaunfield *published* defamatory and untrue statements about Koontz *knowing* that the statements were "false, or believing [them] to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Sepmoree*, 2014 WL 4444435 at *7 (quoting *Gazette, Inc.*, 325 S.E.2d at 724–25). Such allegations would satisfy prongs one and three of a defamation claim: publication and requisite intent. *See Jordan*, 612 S.E.2d at 206.

Koontz identifies only one actionable statement made by Jording, although Jording made similar statements on several occasions: "'[Koontz] was arrested for a felony' and 'was not compliant with SOP' (Standard Operating Procedures) and 'when you don't comply with SOP and show us what we need to see then we need to terminate.'"[20] (Am. Compl. ¶ 18.) Koontz alleges that during the time she was laid off from Home Depot Koontz, Jording and Shaunfield continued to make defaming statements "that [Koontz] had been 'arrested for a felony' and that

---

[20] Other statements made by Jording that Koontz places before the Court do not portray Koontz as "odious [or] infamous," meaning they cannot be considered defamatory under any analysis. *Cutaia v. Radius Eng'g Int'l, Inc.*, No. 5:11cv77, 2012 WL 525471, at *3 (W.D. Va. Feb. 16, 2012). For instance, Koontz states that on the day in which Koontz left to assist her daughter Jording told her that "[Jording] understood and it was OK . . . and that [Koontz] was not to blame." (Am. Compl. ¶ 12.) Certainly such comments do not suggest that Koontz is "odious." *See Cutaia*, 2012 WL 525471 at *3.

Moreover, any allegations that Koontz makes about profane dressings down by Jording do not allege enough to presume that the content of the rebuke amounted to defamation. Because none of these statements are actionable, Koontz cannot support her defamation claim by invoking them. *See Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (finding that for a statement to be defamatory under Virginia law "the allegedly defamatory words must carry 'the requisite defamatory "sting" to one's reputation.'" (internal quotation marks and citation omitted)).

charges were pending to [Koontz's] colleagues, vendors, friends and customers." (*Id.* ¶ 19 (quoting Jording and Shaunfield).)

This meets the publication requirement because Koontz alleges that Jording and Shaunfield made these statements to "colleagues, vendors, friends and customers," (Am. Compl. ¶ 19). *Jordan*, 612 S.E.2d at 206. Finally, Koontz adequately establishes prong three of asserting defamation—requisite intent—when alleging that Jording and Shaunfield made these statements "while knowing that these statements were false, defamatory, slanderous and insulting to [Koontz]," (Am. Comp. ¶ 19). *Jordan*, 612 S.E.2d at 206.

Because Koontz alleges plausible facts to support her defamation claim against Jording and Shaunfield, and because Home Depot could become liable under respondeat superior for the tortious actions of its employees, the Court will deny the Motion to Dismiss as to this claim against all Defendants.[21] *See Iqbal*, 556 U.S. at 678–79.

---

[21] Defendants unsuccessfully argue that Jording's statement amounts to a privileged communication under intra-corporate *privilege*. Defendants claim that Koontz has not provided any evidence that Jording's statement "fell outside the scope of, or would be subject to, the normal intra-corporate privilege that typically exists with respect to communications amongst employees in the course of their work." (Mem. Supp. Mot. Dismiss 4, ECF No. 13.) But, Defendants misstate the burden of proof and cannot properly invoke the intra-corporate privilege at this stage of the litigation.

Under Virginia law, speech earns qualified privilege in the employment context if it comprises "[c]ommunications between persons on a subject in which the persons have an interest or duty." *Echtenkamp v. Loudon Cty. Pub. Sch.*, 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (alteration in original) (citing *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)). Thus, "the privilege applies broadly to all statements related to 'employment matters,' provided the parties to the communication have a duty or interest in the subject matter." *Id.*

To invoke this privilege, Defendants have the burden of proving that the parties to the communication "have a duty or interest in the subject matter." *Id.* Here, the Court looks favorably to Koontz's Amended Complaint in which Koontz alleges Jording and Shaunfield "communicate[d] that [Koontz] had been 'arrested for a felony' and that charges were pending to her colleagues, vendors, friends and customers." (Am. Compl. ¶ 19.) Because Koontz alleges that Jording and Shaunfield made this statement to "vendors, friends and customers," the Court reasonably infers that a vendor, friend, or customer does not constitute someone who "has" a

## IV. Analysis: Tortious Interference with Employment

Defendants next argue that the Court must dismiss Koontz's claim for tortious

interference, Count 2, because the intra-corporate *immunity* doctrine renders a corporation and its

agents a single entity that cannot interfere with itself. Unlike the intra-corporate *privilege*, which

Koontz successfully overcomes in Count 1, *see supra* note 21, Koontz does not allege sufficient

facts to defeat the application of the intra-corporate *immunity* doctrine. The intra-corporate

immunity doctrine bars Koontz's claim because she does not plausibly identify an interfering

third party, nor does she plead sufficient facts to demonstrate that Jording or Shaunfield acted

outside the scope of their employment. Thus, the tortious interference claim does not survive

Defendants' Rule 12(b)(6) challenge.

### A.    Legal Standard for Tortious Interference

In Virginia, to prevail on a claim for tortious interference with a contractual relation, a

plaintiff must prove four elements: "(1) the existence of a valid contractual relationship[...];

(2) knowledge of the relationship[...] on the part of the interferor; (3) intentional interference

inducing or causing a breach or termination of the relationship[...]; and (4) resultant damage to

the party whose relationship . . . has been disrupted." *Commerce Funding Corp. v. Worldwide

Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001).

Unlike the intra-corporate *privilege*, which may bar a plaintiff's defamation claim, *see

Echtenkamp*, 263 F. Supp. 2d at 1061, under the intra-corporate *immunity* doctrine an employer

cannot tortiously interfere with a relationship to which it is a party, *see Stronach v. Virginia State

University*, 631 F. Supp. 2d 743, 753 (E.D. Va. 2008) ("An entity cannot intentionally interfere

---

duty or interest in the subject matter, Koontz alleges sufficient facts to overcome intra-corporate
privilege at this early stage.

with its own contract"). Thus, as a matter of law, an employee acting within the scope of his or her employment cannot interfere with a fellow employee's contract. *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987). In determining whether an employee is acting within the scope of his or her employment, the Court examines whether the act: (1) was "expressly or impliedly directed by the employer, or is naturally incident to the business" and (2) "was performed, although mistakenly or ill-advisedly, *with the intent to further the employer's interest.*" *See Gina Chin & Assoc., Inc. v. First Union Bank*, 537 S.E.2d 573, 577 (Va. 2000) (quoting *Kensington Assoc. v. West*, 362 S.E.2d 900, 901 (Va. 1987) (emphasis in original)). A plaintiff may be able to establish the prima facie elements of tortious interference with a contract against a fellow employee, if the employee acted outside the scope of his or her employment. *See id.*

### B.    Koontz Fails to Plausibly Allege Tortious Interference Against All Defendants Because Koontz Does Not Identify an Interfering Third Party

Even at the motion to dismiss stage, Koontz does not plead sufficient facts to allege that Defendants tortiously interfered with Koontz's employment at Home Depot. Specifically, Koontz does not plead any facts to meet the third required element under *Stronach*: demonstrating that a *third party* interfered with her employment with Home Depot or that Defendants acted outside the scope of their employment. *Stronach*, 631 F. Supp. 2d at 753. No evidence in the record suggests that a third party interfered with Koontz's employment with Home Depot, in part because neither Jording nor Shaunfield acted outside the scope of their employment. Because Koontz based her claim against Home Depot on a theory of respondeat superior and she cannot state a claim against Jording or Shaunfield, she cannot maintain her claim against Home Depot, either.

In her Amended Complaint, Koontz states that Defendants "intentionally interfered with [Koontz's] employment with Home Depot and related economic expectancies." (Am. Compl.

¶ 38.) Home Depot cannot serve as the interfering third party because an employer "cannot be guilty of tortiously interfering with an employment contract to which it is a party." *Haigh v. Matsushita Elec. Corp. of Am.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987). Nor can Jording or Shaunfield constitute an interfering third party because "if the employee acts within the scope of [her or] his duties and in furtherance of the employer's wishes, the employee is deemed to be, in effect, an extension of the employer, and cannot be labeled as an interferer or third party." *See id.* Thus, the tortious interference claim fails against Jording and Shaunfield unless Koontz plausibly alleges facts that Jording and Shaunfield acted outside the scope of their employment. The Court now turns to this inquiry.

In determining whether Jording or Shaunfield acted outside the scope of their employment, the Court will assess whether, as required under the two-part analysis in *Gina*, the alleged acts were directed by Home Depot and performed with the intent to further Home Depot's interest. *See Gina Chin*, 537 S.E.2d at 577. Jording and Shaunfield's actions do not satisfy the *Gina Chin* requirements.

This is true because Koontz fails to plead plausible facts to demonstrate that Jording and Shaunfield's employer, Home Depot, did *not* direct Jording and Shaunfield's actions and that Jording and Shaunfield did *not* intend to further Home Depot's interest in taking these actions. In contrast, Koontz alleges multiple times that Home Depot expressly directed Jording and Shaunfield's actions. For instance, Koontz alleges that "Jording and Shaunfield were tasked by Home Depot with controlling labor costs." (Am. Compl. ¶ 4.) Koontz also alleges that Home Depot sent Jording and Shaunfield to "[c]lean [h]ouse." (*Id.* ¶ 9 (quoting without attribution).)

Although Koontz objects to the practice, this objection does not place Jording or Shaunfield outside the scope of their employment.[22]

Koontz's argument that Jording and Shaunfield did not comply with Home Depot's internal written policies serves as her only argument that Jording and Shaunfield acted outside the scope of their employment. Specifically, Koontz alleges that Defendants violated internal company policy when: (1) Jording reprimanded Koontz with profanity; (2) Jording and Shaunfield failed to report the incident; and, (3) when Shaunfield and Jording "began lying to and misleading their colleagues and corporate officials," (*id.* ¶ 10).

Even reading those allegations favorably to Koontz, the violation of an internal policy will not alone place an employee's conduct outside the scope of employment. *See, e.g., Barry v. Whalen*, 796 F. Supp. 885, 891–92 (E.D. Va. 1992) (discussing that an employee may be engaged in tortious behavior or in violation of administrative procedures, but still be acting within the scope of her employment). Reprimanding employees, exercising discretion in reporting incidents, and discussing employment matters with corporate officials all constitute activities that fall within the scope of Jording and Shaunfield's employment as supervisors with Home Depot. Because Koontz cannot maintain her tortious interference with employment claim against either Jording or Shaunfield, she also cannot maintain her claim against Home Depot under respondeat superior.

---

[22] Koontz seems to suggest that Jording and Shaunfield's actions in firing "older seasoned employees," and "replac[ing] them with younger . . . employees" may constitute unlawful discrimination that takes Jording and Shaunfield's actions outside the scope of their employment. (Am. Compl. ¶ 4.) Under the law, even these factual allegations would not necessarily take Jording and Shaunfield's actions outside the scope of their employment. *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 802–04 (1998) (finding it possible to hold an employer vicariously liable for a supervisor's actions when those actions constitute unlawful discrimination under Title VII and simultaneously establishing the *Faragher/Ellerth* affirmative defense, which allows an employer to escape vicarious liability under certain circumstances).

Because Koontz fails to allege plausible facts to support her tortious interference claim, the Court will grant the Motion to Dismiss as to Count 2 against all Defendants.

## V. Conspiracy to Interfere with Employment

The Motion to Dismiss also challenges Count 3, conspiracy to interfere with employment. Defendants argue that Koontz's conspiracy claim must be dismissed because Koontz does not identify two separate persons who form the conspiracy. For an analogous reason that the Court must dismiss Count 2, the Court must also dismiss the conspiracy to interfere with employment claim in Count 3: Koontz does not allege sufficient facts to identify two separate conspirators because the intra-corporate *immunity* doctrine applies to supervisors acting in the scope of their employment. For this reason, the conspiracy to interfere with employment claim also does not survive Defendants' Rule 12(b)(6) challenge.

### A.     Legal Standard for Common Law Conspiracy

In Virginia, a plaintiff claiming common law conspiracy must allege that "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *T.G. Slater & Son, Inc. v. The Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Commercial Bus. Sys., Inc. v. BellSouth Servs.*, Inc., 453 S.E.2d 261, 267 (Va. 1995)). A common law conspiracy claim also requires a plaintiff to show damages "caused by the acts committed in furtherance of the conspiracy." *See Dogs Deserve Better, Inc. v. Terry*, No. No. 3:14–cv–591, 2015 WL 1288324, at *3 (E.D. Va. Mar. 20, 2015) (internal quotations marks omitted) (citing *Commercial Bus. Sys., Inc.*, 453 S.E.2d at 261).

Similar to the tortious interference with employment claim, separate entities do not exist "if a principal/agent or an employer/employee relationship exists between the parties." *Rogers v.*

*Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014) (citing *Perk v. Vector Res. Grp., Ltd.*, 485

S.E.2d 140, 144 (Va. 1997)). "[U]nder the intracorporate *immunity* doctrine, acts of corporate

agents are acts of the corporation itself, and corporate employees cannot conspire with each other

or with the corporation." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002)

(emphasis added). A single entity cannot legally conspire with itself. *Rogers*, 992 F. Supp. 2d at

633. But parties may constitute separate entities if employees acted outside the scope of their

employment. *See id.* (citing *Deese*, 362 S.E.2d at 699).

### B. Koontz Fails to Plausibly Allege Conspiracy to Commit Tortious Interference Because Koontz Does Not Identify Two or More Persons to Form the Conspiracy

The Court will grant Defendants' Motion to Dismiss Count 3 for reasons similar to those

as those discussed when assessing Count 2. Koontz does not allege any relationship that defeats

the application of the intra-corporate *immunity* doctrine. Under the law, Jording, Shaunfield, and

Home Depot constitute a single entity, thereby defeating the possibility of a conspiracy.

Koontz must show that "two or more persons combined to accomplish, by some

concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or

unlawful means" to maintain her common law conspiracy claim against Defendants. *T.G. Slater*,

385 F.3d at 845 (citations omitted). In her Amended Complaint, Koontz states that "Defendants

Jording and Shaunfield, acting in concert with Home Depot used improper means and methods

. . . to interfere with [Koontz's] Home Depot employment and legitimate economic

expectations." (Am. Compl. ¶ 45.) Koontz does not, in that allegation or anywhere else, identify

any other party to the alleged conspiracy. Even drawing all reasonable inferences favorably to

Koontz, the Amended Complaint lacks any factual allegation that Jording and Shaunfield acted outside the scope of their employment.[23]

Because neither Jording nor Shaunfield acted outside the scope of their employment and Home Depot cannot serve as the interfering third party, Koontz fails to plausibly allege her conspiracy to commit tortious interference claim. The Court will grant the Motion to Dismiss as to Count 3 against all Defendants.

## VI. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the Motion to Dismiss. The Court will allow Count 1, the defamation claim, to proceed against all Defendants. The Court will dismiss Counts 2 and 3, the tortious interference claim and the conspiracy to commit tortious interference claim, in their entirety. Finally, the Court will grant the Motion to Strike.

An appropriate Order shall issue.

_____ /s/
M. Hannah Lauck
United States District Judge

Date: 3/25/2019
Richmond, Virginia

---

[23] Similar to Count 2, Koontz alleges that Jording and Shaunfield acted outside the scope of their employment because they violated Home Depot's internal written policies. As explained *infra* Part IV.B, in all cited instances in the Amended Complaint, Jording and Shaunfield's activities fell within the scope of their employment as supervisors.